IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Grant Street Group, Inc., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Civil Action No. 10-1095 |
| vs. | ) | |
| D&T Ventures, LLC, Pacific Blue Software, Inc., and West Florida Business Systems, Inc., | ) | |
| Defendants. | ) | |
| AMBROSE, Senior District Judge | | |

## OPINION
### and
## ORDER OF COURT

Plaintiff Grant Street Group ("GSG") has brought this patent infringement lawsuit against Defendants D&T Ventures, LLC ("D&T"), Pacific Blue Software, Inc. ("PBS"), and West Florida Business Systems, Inc. ("WFBS"), under 35 U.S.C. § 271 *et seq*. Plaintiff's claims arise from, *inter alia*, Defendants' alleged sale of and offering for sale products and services for conducting online tax lien certificate auctions. Pending before the Court is WFBS's Motion to Dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Docket No. 74). After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, WFBS's Motion to Dismiss is granted.

### I. BACKGROUND

#### A. Factual Background

Plaintiff GSG is a software development company headquartered in Pittsburgh, Pennsylvania. GSG is in the business of, *inter alia*, developing customized software applications used by government entities and financial institutions for Internet auctions of financial and legal instruments. (Complaint ¶ 1). GSG owns the fictitious name registration MuniAuction, Inc. Id.

1

¶ 7. On April 1, 2009, the United States Patent and Trademark Office assigned MuniAuction, Inc. United States Patent No. 7,523,063 entitled "Process and apparatus for conducting auctions over electronic networks" (the " '063 Patent"). Id. The '063 patent discloses "[a]n apparatus and process for conducting auctions, specifically municipal bond auctions, over electronic networks, particularly the Internet." Id.; see also id. Ex. A (Docket No 1-2).

Defendant WFBS is a Florida corporation with its principal place of business in Sarasota, Florida. Declaration of Michael P. Rinell ("Rinell Decl.") ¶ 3 (Docket No. 75-1). WFBS is a software company that provides technology solutions designed to meet the needs of Florida tax collectors. Id. ¶ 4. WFBS licenses tax solution service software to the tax collectors for Leon County and Marion County, Florida. Id. ¶ 17. WFBS provides software services to these tax collectors to assist with their tax sales, including providing an online webpage interface for portions of the bidding process (the registration and entry of bids). Declaration of Steven Barker ("Barker Decl.") ¶ 9 (Docket No. 75-2). WFBS does not administer the auction websites and no tax sales or auctions occur on WFBS's servers. Id. ¶ 10; Rinell Decl. ¶ 18.

Beginning in 2009, Leon and Marion Counties conducted online tax certificate auctions using WFBS's software. WFBS provided support services to the counties related to the auctions. In 2009, Pennsylvania resident and GSG employee, Walter Horigan, unsuccessfully bid on a tax certificate in Marion County's online auction. WFBS sent Mr. Horigan several automated emails related to his bid including a bid receipt, a notice of closure, and a notice of refund. Rinell Decl. ¶¶ 21-23 & Ex. 2; Barker Decl. ¶ 15; Declaration of Walter Wade Horigan ("Horigan Decl.") ¶¶ 8-14 (Docket No. 91-6). Mr. Horigan's bid and WFBS's related emails are WFBS's only contacts with the state of Pennsylvania. There is no evidence that WFBS otherwise advertised in or conducted business in Pennsylvania.

### B. Procedural History

On August 20th, 2010, Plaintiff filed a Complaint against WFBS, D&T, and PBS in this Court. (Docket No. 1). On October 19, 2010, Defendants WFBS and D&T filed a joint motion to

dismiss for lack of personal jurisdiction. (Docket No. 10). On February 4, 2011, PBS filed a similar motion to dismiss. (Docket No. 54). On April 4, 2011, I issued an Order denying the motions to dismiss as premature on the merits and allowing all Defendants to refile motions to dismiss after a period of limited jurisdictional discovery. (Docket No. 71). On May 23, 2011, after jurisdictional discovery, WFBS filed the instant Motion to Dismiss for Lack of Personal Jurisdiction, Memorandum in Support, and supporting documents. (Docket Nos. 74-76). On June 7, 2011, Plaintiff filed a Response in Opposition to WFBS's Motion. (Docket No. 91). On June 13th, 2011, WFBS filed a Reply Memorandum. (Docket No. 98). The motion is now ripe for my review.

## II. LEGAL ANALYSIS

WFBS argues GSG's Complaint against it must be dismissed under rule 12(b)(2) because this Court lacks personal jurisdiction over WFBS. For the reasons set forth below, I agree that there is no personal jurisdiction over WFBS in this forum.

### A. Standard of Review Under Fed. R. Civ. P. 12(b)(2)

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court in all stages of the litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1992). In other words, once a defendant raises a lack of personal jurisdiction as a defense, the burden to prove the existence of personal jurisdiction over the defendant shifts to the plaintiff. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Normally, in response to a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction. When the parties have conducted jurisdictional discovery, however, a plaintiff's burden of proof is by the preponderance of the evidence. Pieczenik v. Dyax Corp., 265 F.3d

1329, 1334 (Fed. Cir. 2001).[1]  The plaintiff may not rely on the pleadings to satisfy his burden, but must establish a basis for personal jurisdiction through sworn affidavits or other competent evidence.  N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (2d Cir. 1990).

## B. Personal Jurisdiction

Under the Federal Rules of Civil Procedure, "a district court may assert personal jurisdiction 'over non-resident defendants to the extent permissible under the law of the state where the district court sits.'" Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998)); Beverly Hills Fan Co., 21 F.3d at 1569.  Under Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322(b), Pennsylvania courts may "exercise personal jurisdiction over non-resident defendants to the constitutional limits of the Due Process Clause of the Fourteenth amendment."  Remick, 238 F.3d at 255 (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)).  Because the reach of Pennsylvania's long-arm statute is coextensive with the federal Due Process Clause, I look to whether the federal constitutional requirements of due process are satisfied.

There are two types of personal jurisdiction a court may assert over a defendant – general jurisdiction or specific jurisdiction.  Mellon Bank (East) PSFS, 960 F.2d at 1221. "If general jurisdiction exists, a court may exercise jurisdiction over a non-resident defendant as to any claim against [him], regardless of whether the subject matter of the cause of action has any connection to the forum." Id.  General jurisdiction normally is invoked only when a defendant has maintained "systematic and continuous" contacts with the forum state.  Marten v Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v Hall, 466 U.S. 408, 414-15 & n.8 (1984)); Remick, 238 F.3d at 255.  In contrast, specific jurisdiction "is

---

[1]  The exercise of personal jurisdiction in a patent infringement lawsuit is a question of federal law controlled by the decisions of the Federal Circuit.  See, e.g., 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1376-77 (Fed. Cir. 1998); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).

present only if the plaintiff's cause of action arises out of a defendant's forum related activities, such that the defendant should reasonably anticipate being haled into court in that forum." Remick, 238 F.3d at 255 (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996)); see also Marten, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").

Here, Plaintiff does not argue that this Court has general jurisdiction over WFBS.[2] Rather, Plaintiff contends that the facts of record support a finding of specific jurisdiction over WFBS. For the reasons set forth below, I disagree.

The Court of Appeals for the Federal Circuit applies a three-prong test to determine whether the exercise of specific personal jurisdiction satisfies due process in a patent case. Specifically, the existence of specific jurisdiction depends on:

> (1) whether the defendant "purposely directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair."

Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201-02 (Fed. Cir. 2003) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)); see also Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1994). Although isolated or sporadic contacts that create a substantial connection with the forum state may support specific jurisdiction, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980), these contacts must be more than "random, fortuitous, or attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).

---

[2] Plaintiff mentions in its opposition brief that it addressed the issues of general jurisdiction in its response in opposition to WFBS's pre-discovery motion to dismiss and thus has not revisited the topic in the briefs currently before me. Pl.'s Br. Opp. (Docket No. 91) at 9. Even if Plaintiff intends this comment to preserve its general jurisdiction argument, which is unclear at best, I decline to find such jurisdiction in this case. On this point, I agree with WFBS that the facts, even when viewed in the light most favorable to Plaintiff, do not establish the type of constant, systematic contacts with Pennsylvania or its citizens that would give this Court general personal jurisdiction over WFBS. See WFBS Br. Supp. (Docket No. 75) at 8.

I disagree with Plaintiff that this Court has specific jurisdiction over WFBS under this traditional jurisdictional test. Indeed, there simply is no evidence that WFBS purposely directed any activities at residents of Pennsylvania, let alone activities giving rise to Plaintiff's claims in this case. To the contrary, the affidavits and other evidence show that WFBS is a Florida corporation with its principal place of business in Sarasota, Florida. WFBS has no branches or offices outside of Sarasota, and does not own or possess any real property outside of Florida. WFBS does not have any employees, customers or clients in Pennsylvania and does not utilize any vendors in Pennsylvania. WFBS also does not advertise its products in media outlets in Pennsylvania and has never attended a trade show in Pennsylvania. WFBS has not directed any proposals, marketing plans, or business plans to Pennsylvania residents or entities and has no contracts with any Pennsylvania residents. Rinell Decl. ¶¶ 3-15.

WFBS's activities related to the tax-licensing software at issue in this case likewise have no connection to Pennsylvania. As the evidence makes clear, WFBS licensed the tax software at issue to two counties located in Florida and provides software services to assist with those counties' tax sales. WFBS does not conduct tax sales auctions itself or have any control over the Marion or Leon County tax sales or auctions. Any support services WFBS provides are provided at the Tax Collectors' direction or request. WFBS does not advertise or solicit the public regarding tax sale services. Rather, the Tax Collectors use their own websites to solicit users/bidders. The counties manage all advertisements of the tax sales and those advertisements occur solely in Florida. WFBS does not contract directly with bidders or other users of the software or related websites. Id. ¶¶ 17-20; Barker Decl. ¶¶ 4-12.

Indeed, the evidence submitted shows only one contact of any kind with Pennsylvania even arguably related to Plaintiff's claims in this case – *i.e.*, the use of Marion County's online system by one individual Pennsylvania resident to place one bid during the 2009 auction.[3] This

---

[3] There is no evidence that any Pennsylvania residents placed any bids or otherwise participated in any online tax certificate auctions in Leon County involving WFBS's products or services.

one user, Walter Horigan, was an employee of Plaintiff whose job duties included the investigation of competitor websites. Mr. Horigan's bid was nominal, and no sale with Mr. Horigan was ever consummated.

Plaintiff's argument that this lone contact is sufficient to confer specific personal jurisdiction over WFBS under the facts of this case, is without merit. Although Plaintiff is correct that, under certain circumstances, even a single act can support specific jurisdiction, this is not one of those situations. As set forth above, the county tax collectors determine the criteria for any potential tax certificate sales, and any sales contracts are between the users/bidders and the tax collectors. WFBS does not solicit bidders or have any control over who can bid on or purchase the tax certificates. Thus, Mr. Horigan's bid and related automated e-mails do not demonstrate that WFBS *purposefully* directed any activities to Pennsylvania or Pennsylvania residents. As the Court of Appeals for the Federal Circuit has explained:

> In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, . . . the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant. . . . [Plaintiff's] flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998) (quoting Burger King, 471 U.S. at 475)[4]; see also Burger King, 471 U.S. at 475 n.17 and cases cited therein.

Even if the tax collectors' activities were somehow attributable to WFBS under any of Plaintiff's infringement theories, Marion County's single contact with Mr. Horigan would still be insufficient to create specific jurisdiction over WFBS. In addition to the fact that Mr. Horigan's

---

[4] Plaintiff criticizes WFBS's citation to Red Wing Shoe Co., arguing that the case is distinguishable because it involved a declaratory judgment action in which the defendant patentee's licensing activities were not relevant to the underlying cause of action. See Pl.'s Br. Opp. (Docket No. 91) at 6-7. This distinction, however, does not alter the Red Wing Shoe court's correct recitation of the general proposition that "contacts resulting from the 'unilateral activity' of others, do not count" in the minimum contacts analysis. Red Wing Shoe Co., 148 F.3d at 1359, 1361 (citing Burger King, 471 U.S. at 475 & n.17).

7

participation was Marion (or Leon) County's only documented contact with Pennsylvania, Mr. Horigan was an employee of Plaintiff whose job duties included the investigation of competitor websites. Although the case law on this issue is unsettled, many courts have held that a plaintiff cannot orchestrate personal jurisdiction over a defendant through its own activity. See, e.g., Boppy Co. v. Luvee Prods. Corp., No. 04-MK-320 (OES), 2004 WL 2608265, at *5 (D. Colo. May 25, 2004); Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 401-02 (4th Cir. 2003). This consideration is especially relevant here where the content of the websites at issue clearly have a strongly local character and the record is devoid of evidence that either Marion or Leon County designed their websites to attract or serve a Pennsylvania audience. For all of these reasons, the single bid initiated by Mr. Horigan via Marion County's tax auction website is an insufficient contact to sustain specific jurisdiction over WFBS in Pennsylvania under the classic jurisdictional test.[5]

Plaintiff's alternative argument that WFBS should be subject to personal jurisdiction because it provides highly interactive websites to its tax collector clients that have been accessed in Pennsylvania is likewise misplaced.

Although the Court of Appeals for the Federal Circuit has not yet expressly adopted it, courts routinely use the Zippo "sliding scale" test of online interactivity to evaluate jurisdiction based on the use and availability of an internet site. See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); see also Trintec Indus. Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1283 (Fed. Cir. 2005). Under the Zippo test, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and

---

[5] Plaintiffs citation to NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1316 (Fed. Cir. 2005), for the proposition that Plaintiff's infringement claims arise out of Pennsylvania because a Pennsylvania resident has "used" the infringing system does not change my conclusion. See Pl.'s Br. Opp. (Docket No. 91) at 14-15. Even accepting *arguendo* Plaintiff's characterization of the NTP, Inc. court's analysis of the term "use," that case speaks to the merits of the infringement claim and does not involve a personal jurisdiction analysis. Moreover, Plaintiff's argument goes to the second prong of the specific jurisdiction analysis – *i.e.*, that the claim "arise out of or relate to" the defendant's forum activities. Pl.'s Br. Opp. at 14-15. As set forth above, Plaintiff has not shown that WFBS has met the first prong of the jurisdictional test – purposeful availment. Because WFBS has not purposefully directed any activities at Pennsylvania residents, I do not reach the "arising out of" step.

quality of commercial activity that an entity conducts over the Internet. At one end of the spectrum are situations where a defendant actively does business over the Internet and thereby purposely avails itself of the privilege of engaging in activity in that state. Zippo, 952 F. Supp. at 1124. A defendant on this side of the scale typically "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." Toys "R" Us, Inc. v. Two Step, S.A., 318 F.3d 446, 451 (3d Cir. 2003) (quoting Zippo, 952 F. Supp. at 1124). At the opposite end of the scale are situations where a defendant has simply posted information on an Internet website accessible to users in other jurisdictions. Zippo, 952 F. Supp. at 1124. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. Id. "The middle ground is occupied by interactive web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Id. As the Court of Appeals for this Circuit has explained:

> the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts.

Toys "R" Us, Inc., 318 F.3d at 454. For example, courts acknowledge that the Zippo defendants purposefully availed themselves of conducting activity in Pennsylvania by contracting with approximately 3,000 Pennsylvanians and "repeatedly and consciously cho[osing] to process Pennsylvania residents' applications and to assign them passwords," knowing that the contacts would result in business relationships with Pennsylvania customers. Zippo, 952 F. Supp. at 1126; see also Machulsky v. Hall, 210 F. Supp. 2d 531 (D.N.J. 2002).

Here, there are two categories of websites potentially at issue: (1) WFBS's company website located at the domain named www.wfbsusa.com and (2) the websites on which the two

counties conduct the tax certificate auctions at issue. None of these websites, however, establish personal jurisdiction over WFBS under Zippo or any other jurisdictional test. The first website, www.wfbsusa.com, is hosted in Tampa, Florida and is an informational website intended for tax collectors in the State of Florida. Rinell Decl.¶ 16. Because there is no evidence or argument that this website is anything other than a passive website that makes information available to those who are interested in it, the website is not grounds for the exercise of personal jurisdiction.

Perhaps recognizing the passive nature of WFBS's corporate website, Plaintiff focuses its jurisdictional arguments on the counties' tax auction websites themselves. See Pl.'s Br. Opp. at 7-9. Specifically, Plaintiff argues that because these auction websites are highly interactive, WFBS has provided the websites to the counties, and a Pennsylvania resident has participated in the auctions, exercise of personal jurisdiction is proper. Id. at 8. I disagree.

As the evidence shows, the website located at www.mariontax.com is owned and operated solely by Marion County.[6] WFBS does not run or operate this website. Barker Decl. ¶¶ 4-5. WFBS does not contract directly with users of the website. The terms of use found at the website are between Marion County and the user. WFBS is not a party. Id. ¶ 7. Although WFBS hosts an online interface for portions of the bidding process, the webpage interface shows that users are dealing directly with Marion County.[7] Id. ¶ 9; see also Docket Nos. 91-1 & 91-2 (Software License Agreements) at 25-27. No tax sales or auctions occur on WFBS's servers. Rather, such sales/auctions occur on Marion County's servers within the Marion

---

[6] I focus on Marion County's website here due to the lack of evidence of any Pennsylvania bids or sales over the Leon County website. There is no evidence that the Leon County website differs in any material way from the Marion County site.

[7] It appears that domain name for the Marion County interface is www.wfbsusa.com/mariontaxsale/. See, e.g., Docket No. 91-4 (Pl.'s Resp. Opp., Ex. 4); Docket No. 91-5, at 4-5 (Declaration of David G. Dering, Ex. 1). There is no evidence, however, that users can access this interface through the www.wfbusa.com website itself. Rather, the tax sale process begins at the www.mariontax.com website and no tax sales or auctions actually occur on WFBS's servers. Barker Decl. ¶¶ 5, 10. The webpage interface shows that users are dealing directly with Marion County, and no other entity, as Marion County's logos appear predominantly. Id. ¶ 9.

County data server. Barker Decl. ¶ 10. WFBS does not collect or maintain any user information. Any information a user inputs into the interface is sent directly to Marion County's servers. Id. ¶ 11. WFBS does not administer the tax auctions and does not solicit users or bidders. Rinell Decl. ¶¶ 17-18. The tax collectors, based on criteria they have established for bidders, independently determine whether a party can participate in a tax certificate auction. WFBS does not participate in any way in that decision. Id. ¶ 19. Except for GSG employee Walter Horigan's 2009 unsuccessful bid, no other Pennsylvania residents used the Marion County or Leon County tax collector's online system to bid on a tax certificate.

Based on these facts, I find that WFBS did not purposefully avail itself of conducting activity in Pennsylvania. The mere fact that WFBS may have provided a "highly interactive" website to its clients to use to conduct tax certificate auctions does not automatically confer personal jurisdiction. As set forth above, contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant for jurisdictional purposes.[8] Regardless of the degree of interactivity of the website, it is undisputed that WFBS has no control over where or to whom the tax collectors can sell the tax certificates. Given WFBS's complete lack of control over the tax sale process coupled with the absence of any significant contacts with Pennsylvania, I simply cannot conclude that WFBS "purposefully availed" itself of conducting activity in Pennsylvania.

In short, the courts have made it clear that the advent of the Internet has not vitiated the traditional concepts of minimum contacts and the requirement that defendants have sufficient contacts with the forum jurisdiction that they could reasonably anticipate being sued there. In this case, there are virtually no contacts between WFBS and Pennsylvania, let alone contacts

---

[8] In addition to the lack of evidence that WFBS directed any of its web activities to Pennsylvania, there is no evidence that the counties themselves targeted their websites or activities to Pennsylvania residents. Although the county websites and auctions were certainly accessible from Pennsylvania, there is no evidence that the Florida counties targeted Pennsylvanians to a degree any greater than other users. To the contrary, the evidence indicates that the county websites were equally accessible in all states and that, if anything, the counties primarily targeted Florida and Florida residents.

with or benefits from Pennsylvania that reasonably would lead WFBS to expect that it could be subject to liability here. I agree with WFBS that the exercise of personal jurisdiction over WFBS in this case would render local businesses that license software and/or provide related web support services to local customers amenable to suit in any jurisdiction from which an Internet user could access its customer's website. See Pl.'s Br. Supp. at 2. Such a broad application of personal jurisdiction would offend the "well-tested constitutional standards requiring 'minimum contacts' and the constitutional notions of fair play and substantial justice." Id.

### III. CONCLUSION

For the foregoing reasons, Defendant WFBS's Motion to Dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Grant Street Group, Inc., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>D&T Ventures LLC, Pacific Blue )<br>Software, Inc., and West Florida )<br>Business Systems, Inc., )<br>)<br>Defendants.<br><br>AMBROSE, Senior District Judge | Civil Action No. 10-CV-01095 |

## ORDER OF COURT

AND NOW, this 4th day of January, 2012, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant West Florida Business Systems' Motion to Dismiss (Docket No. 74) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Judge