IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| Grant Street Group, Inc., | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil Action No. 10-1095 |
| vs. | ) ) ) | |
| D&T Ventures, LLC, Pacific Blue Software, Inc., and West Florida Business Systems, Inc., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| AMBROSE, Senior District Judge | | |

**OPINION**
**and**
**ORDER OF COURT**

Plaintiff Grant Street Group ("GSG") has brought this patent infringement lawsuit against Defendants D&T Ventures, LLC ("D&T"), Pacific Blue Software, Inc. ("PBS"), and West Florida Business Systems, Inc. ("WFBS"), under 35 U.S.C. § 271 *et seq*. Plaintiff's claims arise from, *inter alia*, Defendants' alleged sale of and offering for sale products and services for conducting online tax lien certificate auctions. Pending before the Court is D&T's Motion to Dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Docket No. 77). After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, D&T's Motion to Dismiss is granted.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff GSG is a software development company headquartered in Pittsburgh, Pennsylvania. GSG is in the business of, *inter alia*, developing customized software applications used by government entities and financial institutions for Internet auctions of financial and legal instruments. (Complaint ¶ 1). GSG owns the fictitious name registration MuniAuction, Inc. Id.

1

¶ 7. On April 1, 2009, the United States Patent and Trademark Office assigned MuniAuction, Inc. United States Patent No. 7,523,063 entitled "Process and apparatus for conducting auctions over electronic networks" (the " '063 Patent"). Id. The '063 patent discloses "[a]n apparatus and process for conducting auctions, specifically municipal bond auctions, over electronic networks, particularly the Internet." Id.; see also id. Ex. A (Docket No 1-2).

Defendant D&T is a Minnesota limited liability company with its sole offices located in St. Cloud, Minnesota. Affidavit of Jeffrey Schulze ("Schulze Aff.") ¶ 2 (Docket No. 77-1). D&T, as it currently exists, came into existence in 2007 when it purchased the assets of a former entity also known as D&T Ventures, LLC. Id. D&T is a company that provides consulting, support, and technology solutions designed to support, among other things, auctions of delinquent tax certificates over the Internet. Id. ¶ 3. D&T offers these services to counties, cities, and other governmental agencies or entities. Id.

For its tax certificate auction clients, D&T consults and provides them with the necessary software to operate their electronic auctions. Id. ¶ 15. The software that D&T licenses that is used for internet auctions of tax certificates is licensed only to counties in the State of Florida. Id. ¶ 3. D&T will, if necessary, build its clients a website that will be owned and operated by the client. The county or governmental agency will manage the site, its contents, and those who may participate in any auction. Id. ¶ 15. D&T's role is to host the website and store or archive relevant information for the county or agency. The websites are hosted on computers located in Florida, and any support comes from D&T's Minnesota offices or onsite in Florida. Id. ¶ 16. The counties establish when the bidding will begin, when it will end, and when the auction for a certificate is awarded. Id. ¶ 18. The county directly receives the requisite bidder deposit money that is paid into that county's online tax sales site and, upon payment of the same, transfers the tax certificates to the winning bidders. Id. These functions are the responsibility of the county and its personnel and are not administered, managed or conducted by D&T. Id. D&T does not enter into contracts or sell to any bidders on behalf of the counties. Rather, the

county is the entity that enters into agreements with the bidders, allows them access to specific sale information and sells the tax certificates. Declaration of Celeste Watford ("Watford Decl.") ¶ 5 (Docket No. 97-1); see also Supplemental Affidavit of Jeffery Schulze ("Supp. Schulze Aff.") ¶¶ 3-6 (Docket No. 97-2).

Between 2007 and 2010, D&T licensed and sold its software solutions to ten Florida counties to allow those counties to collect their delinquent taxes through the sale of tax certificates over the Internet. Schulze Aff. ¶ 20. During those years, there were a total of 2,678 bidders who registered for the tax certificate auctions with the counties. During the same timeframe, the counties collectively sold 59,626 tax certificates to those registered bidders. Id. ¶ 21. Of the tax certificates purchased through online auctions run by the counties, there were eleven bidders and four certificate purchasers from Pennsylvania. Id. ¶ 22; Schulze Supp. Aff. ¶ 19. Under their Web Services Agreements with D&T, the counties agreed to pay D&T $14.00 for each individual tax certificate sold using the tax auction website. See Docket No. 88-1 (Pl.'s Resp. Opp., Ex. 1).

As part of its support services, D&T would send out routine communications regarding a county's tax sale. Communications also would go out to successful bidders. In addition D&T sent out an e-mail blast to all 2008 bidders regarding the dates on which the 2009 auctions would occur. Three out of 794 such communications in the e-mail blast were sent to Pennsylvania residents. Schulze Aff. ¶ 23; see also Docket 95-3 (Pl.'s Resp. Opp., Ex. 4). Any communications sent by D&T were solely upon the request, and under the authority, of the counties and were incident to the tax certificate sale process. Watford Decl. ¶ 14.

### B. Procedural History

On August 20th, 2010, Plaintiff filed a Complaint against WFBS, D&T, and PBS in this Court. (Docket No. 1). On October 19, 2010, Defendants WFBS and D&T filed a joint motion to dismiss for lack of personal jurisdiction. (Docket No. 10). On February 4, 2011, PBS filed a similar motion to dismiss. (Docket No. 54). On April 4, 2011, I issued an Order denying the

motions to dismiss as premature on the merits and allowing all Defendants to refile motions to dismiss after a period of limited jurisdictional discovery. (Docket No. 71). On May 23, 2011, after jurisdictional discovery, D&T filed the instant Motion to Dismiss for Lack of Personal Jurisdiction, Memorandum in Support, and supporting documents. (Docket Nos. 77-78). On June 6, 2011, Plaintiff filed a Response in Opposition to D&T's Motion. (Docket No. 88, 95). On June 13, 2011, D&T filed a Reply Memorandum. (Docket No. 97). The motion is now ripe for my review.

## II. LEGAL ANALYSIS

D&T argues GSG's Complaint against it must be dismissed under rule 12(b)(2) because this Court lacks personal jurisdiction over D&T. For the reasons set forth below, I agree that there is no personal jurisdiction over D&T in this forum.

### A. Standard of Review Under Fed. R. Civ. P. 12(b)(2)

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court in all stages of the litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1992). In other words, once a defendant raises a lack of personal jurisdiction as a defense, the burden to prove the existence of personal jurisdiction over the defendant shifts to the plaintiff. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Normally, in response to a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction. When the parties have conducted jurisdictional discovery, however, a plaintiff's burden of proof is by the preponderance of the evidence. Pieczenik v. Dyax Corp., 265 F.3d 1329, 1334 (Fed. Cir. 2001).[1] The plaintiff may not rely on the pleadings to satisfy his burden,

---

[1] The exercise of personal jurisdiction in a patent infringement lawsuit is a question of federal law controlled by the decisions of the Federal Circuit. See, e.g., 3D Sys., Inc. v. Aarotech Labs., Inc., 160

but must establish a basis for personal jurisdiction through sworn affidavits or other competent evidence. N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (2d Cir. 1990).

### B. Personal Jurisdiction

Under the Federal Rules of Civil Procedure, "a district court may assert personal jurisdiction 'over non-resident defendants to the extent permissible under the law of the state where the district court sits.'" Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998)); Beverly Hills Fan Co., 21 F.3d at 1569. Under Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322(b), Pennsylvania courts may "exercise personal jurisdiction over non-resident defendants to the constitutional limits of the Due Process Clause of the Fourteenth amendment." Remick, 238 F.3d at 255 (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). Because the reach of Pennsylvania's long-arm statute is coextensive with the federal Due Process Clause, I look to whether the federal constitutional requirements of due process are satisfied.

There are two types of personal jurisdiction a court may assert over a defendant – general jurisdiction or specific jurisdiction. Mellon Bank (East) PSFS, 960 F.2d at 1221. "If general jurisdiction exists, a court may exercise jurisdiction over a non-resident defendant as to any claim against [him], regardless of whether the subject matter of the cause of action has any connection to the forum." Id. General jurisdiction normally is invoked only when a defendant has maintained "systematic and continuous" contacts with the forum state. Marten v Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v Hall, 466 U.S. 408, 414-15 & n.8 (1984)); Remick, 238 F.3d at 255. In contrast, specific jurisdiction "is present only if the plaintiff's cause of action arises out of a defendant's forum related activities, such that the defendant should reasonably anticipate being haled into court in that forum."

---

F.3d 1373, 1376-77 (Fed. Cir. 1998); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).

Remick, 238 F.3d at 255 (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996)); see also Marten, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").

Here, Plaintiff does not argue that this Court has general jurisdiction over D&T.[2] Rather, Plaintiff contends that the facts of record support a finding of specific jurisdiction over D&T. For the reasons set forth below, I disagree.

The Court of Appeals for the Federal Circuit applies a three-prong test to determine whether the exercise of specific personal jurisdiction satisfies due process in a patent case. Specifically, the existence of specific jurisdiction depends on:

> (1) whether the defendant "purposely directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair."

Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201-02 (Fed. Cir. 2003) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)); see also Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1994). Although isolated or sporadic contacts that create a substantial connection with the forum state may support specific jurisdiction, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980), these contacts must be more than "random, fortuitous, or attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).

I disagree with Plaintiff that this Court has specific jurisdiction over D&T under this traditional jurisdictional test. Indeed, there simply is no evidence that D&T purposely directed any activities at residents of Pennsylvania, let alone activities giving rise to Plaintiff's claims in

---

[2] Plaintiff mentions in its opposition brief that it addressed the issues of general jurisdiction in its response in opposition to D&T's pre-discovery motion to dismiss and thus has not revisited the topic in the briefs currently before me. Pl.'s Br. Opp. (Docket No. 88) at 11. Even if Plaintiff intends this comment to preserve its general jurisdiction argument, which is unclear at best, I decline to find such jurisdiction in this case. On this point, I agree with D&T that the facts, even when viewed in the light most favorable to Plaintiff, do not establish the type of continuous, systematic contacts with Pennsylvania or its citizens that would give this Court general personal jurisdiction over D&T. See D&T Br. Supp. (Docket No. 78) at 8.

this case. As the affidavits and other evidence show, D&T is a Minnesota corporation with its sole office in St. Cloud, Minnesota. D&T has no offices, locations, employees, or other presence or residence outside of Minnesota, is not registered to do business in any state other than Minnesota, and does not own or possess any real property outside of Minnesota. D&T does not have any Pennsylvania clients and does not utilize any vendors in Pennsylvania. D&T also does not advertise its products in media outlets in Pennsylvania and does not attend or exhibit in any trade shows in Pennsylvania. Schulze Aff. ¶¶ 4-9.

D&T's activities related to the tax-licensing software at issue in this case likewise have no connection to Pennsylvania. As the evidence shows, D&T licensed and sold the software at issue to ten counties located in Florida during the 2007-2010 timeframe and provides software services to assist with those counties' tax sales. Id. ¶ 20. D&T's role in the tax sales is to provide support to the counties. In this capacity, it hosts the tax sale website and stores or archives relevant information for the counties or government agencies. Id. ¶ 16. This support comes from D&T's Minnesota offices or onsite in Florida. Id. The websites are hosted on computers located in Florida. Id. When an interested party starts the registration process, the county, not D&T, monitors and manages the bidder requests and enters into contracts with qualified bidders. Only after reviewing and approving the bidder does the county "activate" the online bidder account. Id. ¶ 17. The county establishes when bidding will begin, when it will end, and when the auction for a certificate is awarded. The county directly receives the bidder deposit money that is paid into the online tax sales site and, upon payment of the same, transfers the tax certificates to the winning bidders. Id. ¶ 18. None of these functions are administered, managed, or conducted by D&T. Id.; see also Watford Decl. ¶¶ 3-15; Supp. Schulze Aff. ¶¶ 3-6.

The only evidence submitted showing contacts of any kind with Pennsylvania even arguably related to Plaintiff's claims in this case includes documentation that of the 2,678 bidders who registered for the tax certificate auctions with the counties and the 59,626 tax

certificates collectively sold by the counties, there were eleven bidders and four certificate purchasers from Pennsylvania. Schulze Aff. ¶¶ 21-22 & Exs. A-J. In addition, in connection with the bidding process, routine communications would be sent to bidders to support or facilitate the tax sale. Communications also would be sent to the successful bidders. D&T also sent an e-mail to all 2008 bidders regarding the dates for the 2009 tax auction. There were three such communications in this e-mail blast that were sent to Pennsylvania residents out of the 794 bidders from that prior year. Id. ¶ 23; see also Docket No. 95-3.

Plaintiff's argument that these contacts are sufficient to confer specific personal jurisdiction over D&T under the facts of this case is without merit. Although Plaintiff is correct that, under certain circumstances, even a single act can support specific jurisdiction, this is not one of those situations. As set forth above, the county tax collectors determine the criteria for any potential tax certificate sales, and any sales contracts are between the users/bidders and the tax collectors. D&T does not solicit bidders or have any control over who can bid on or purchase the tax certificates. Thus, the eleven Pennsylvania bids (including the four successful bids) and related automated e-mails do not demonstrate that D&T *purposefully* directed any activities to Pennsylvania or Pennsylvania residents. As the Court of Appeals for the Federal Circuit has explained:

> In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, . . . the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant. . . . [Plaintiff's] flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998) (quoting Burger King, 471 U.S. at 475)[3]; see also Burger King, 471 U.S. at 475 n.17 and cases

---

[3] Plaintiff criticizes D&T's citation to Red Wing Shoe Co., arguing that the case is distinguishable because it involved a declaratory judgment action in which the defendant patentee's licensing activities were not relevant to the underlying cause of action. See Pl.'s Br. Opp. (Docket No. 91) at 6-7. This distinction, however, does not alter the Red Wing Shoe court's correct recitation of the general proposition that

cited therein.  For all of these reasons, the contacts at issue are insufficient to sustain specific jurisdiction over D&T in Pennsylvania under the classic jurisdictional test.[4]

Plaintiff's alternative argument that D&T should be subject to personal jurisdiction because it provides highly interactive websites to its tax collector clients that have been accessed in Pennsylvania is likewise misplaced.

Although the Court of Appeals for the Federal Circuit has not yet expressly adopted it, courts routinely use the Zippo "sliding scale" test of online interactivity to evaluate jurisdiction based on the use and availability of an internet site.  See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); see also Trintec Indus. Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1283 (Fed. Cir. 2005).  Under the Zippo test, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.  At one end of the spectrum are situations where a defendant actively does business over the Internet and thereby has purposely avails itself of the privilege of engaging in activity in that state.  Zippo, 952 F. Supp. at 1124. A defendant on this side of the scale typically "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet."  Toys "R" Us, Inc. v. Two Step, S.A., 318 F.3d 446, 451 (3d Cir. 2003) (quoting Zippo, 952 F. Supp. at 1124). At the opposite end of the scale are situations where a defendant has simply posted information on an Internet website accessible to users in

---

"contacts resulting from the 'unilateral activity' of others, do not count" in the minimum contacts analysis. Red Wing Shoe Co., 148 F.3d at 1359, 1361 (citing Burger King, 471 U.S. at 475 & n.17).

[4] Plaintiffs citation to NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1316 (Fed. Cir. 2005), for the proposition that Plaintiff's infringement claims arise out of Pennsylvania because a Pennsylvania resident has "used" the infringing system does not change my conclusion.  See Pl.'s Br. Opp. (Docket No. 88) at 15-16.  Even accepting *arguendo* Plaintiff's characterization of the NTP, Inc. court's analysis of the term "use," that case speaks to the merits of the infringement claim and does not involve a personal jurisdiction analysis.  Moreover, Plaintiff's argument goes to the second prong of the specific jurisdiction analysis – *i.e.*, that the claim "arise out of or relate to" the defendant's forum activities.  Id.  As set forth above, Plaintiff has not shown that D&T has met the first prong of the jurisdictional test – purposeful availment. Because D&T has not purposefully directed any activities at Pennsylvania residents, I do not reach the "arising out of" step.

other jurisdictions. Zippo, 952 F. Supp. at 1124. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. Id. "The middle ground is occupied by interactive web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Id. As the Court of Appeals for this Circuit has explained:

> the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts.

Toys "R" Us, Inc., 318 F.3d at 454. For example, courts acknowledge that the Zippo defendants purposefully availed themselves of conducting activity in Pennsylvania by contracting with approximately 3,000 Pennsylvanians and "repeatedly and consciously cho[osing] to process Pennsylvania residents' applications and to assign them passwords," knowing that the contacts would result in business relationships with Pennsylvania customers. Zippo, 952 F. Supp. at 1126; see also Machulsky v. Hall, 210 F. Supp. 2d 531 (D.N.J. 2002).

Here, there are three categories of websites potentially at issue: (1) D&T's company website located at the domain named www.dtventures.net; (2) the consolidated website portal that D&T developed for the counties that utilize its services, www.flataxsales.com; and (3) the websites on which the counties actually conduct the tax certificate auctions. None of these websites, however, establish personal jurisdiction over D&T under Zippo or any other jurisdictional test.

The first website, www.dtventures.com, is a non-interactive, informational company website hosted in California. Schulze Aff.¶¶ 10-11. Because there is no evidence or argument that this website is anything other than a passive website that makes information available to

those who are interested in it, the website is not grounds for the exercise of personal jurisdiction. The www.flataxsales.com likewise does not confer personal jurisdiction under the Zippo test. The www.flataxsales.com website was created for the convenience of the counties and the bidders. It is minimally interactive, if at all, and primarily provides information to bidders and serves as a portal to the counties' websites. See Schulze Aff. ¶¶ 17-18, 23.

Perhaps recognizing the passive or minimally interactive nature of D&T's corporate websites, Plaintiff focuses its jurisdictional arguments on the counties' tax auction websites themselves. See Pl.'s Br. Opp. at 10. Specifically, Plaintiff argues that because these auction websites are highly interactive, D&T has provided the websites for and to the counties, and at least eleven Pennsylvania residents have participated in the auctions, exercise of personal jurisdiction is proper. Id. I disagree.

If necessary, D&T will build individual counties a tax auction website. Id. ¶ 15. The counties own and operate any such websites as well as manage the sites, their contents, and those that will participate in any auction. Id. D&T's role with respect to the county websites is one of support. In this capacity, it hosts the website and stores or archives relevant information for the counties. The websites are hosted on computers located in Florida, and any support comes from D&T's Minnesota offices or onsite in Florida. Id. ¶ 16. For each auction, the county establishes when the bidding will begin, when it will end, and when the auction for a certificate is awarded. The county directly receives the requisite bidder deposit money that is paid into the county's online tax sales site and, upon payment of the same, the county transfers the tax certificates to the winning bidders. D&T does not administer, manage, or conduct any of these functions. Id. ¶ 18. Bidders or purchasers of tax certificates enter into contracts with the county and, for the actual auctions, are logged on to the county's website. Id. ¶ 19.

Based on these facts, I find that D&T did not purposefully avail itself of conducting activity in Pennsylvania. The mere fact that D&T may have provided a "highly interactive" tax portal website or interactive websites to its clients to use to conduct tax certificate auctions does

not automatically confer personal jurisdiction. As set forth above, contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant for jurisdictional purposes.[5] Regardless of the degree of interactivity of the websites at issue, it is undisputed that D&T has no control over where or to whom the tax collectors can sell the tax certificates. Likewise, there is no evidence that D&T has any control over the identity of bidders; any discretion to stop a sale or to impose specific terms of sale; or any ability to exclude bidders from any particular location. Given D&T's complete lack of control over the tax sale process coupled with the absence of any significant contacts with Pennsylvania, I simply cannot conclude that D&T "purposefully availed" itself of conducting activity in Pennsylvania.

In short, the courts have made it clear that the advent of the Internet has not vitiated the traditional concepts of minimum contacts and the requirement that defendants have sufficient contacts with the forum jurisdiction that they could reasonably anticipate being sued there. In this case, Plaintiff has not shown that D&T has contacts with or benefits from Pennsylvania that reasonably would lead D&T to expect that it could be subject to liability here. To exercise personal jurisdiction over it in this case would render D&T amenable to suit in any jurisdiction from which an Internet user could access the tax auction websites despite D&T's lack of discretion and control over such access or the tax auctions themselves. Such a broad application of personal jurisdiction would offend the longstanding constitutional standards requiring "minimum contacts" and the constitutional notions of fair play and substantial justice. <u>Id.</u>

---

[5] In addition to the lack of evidence that D&T directed any of its web activities to Pennsylvania, there is no evidence that the counties themselves targeted their websites or activities to Pennsylvania residents. Although the county websites and auctions were certainly accessible from Pennsylvania, there is no evidence that the Florida counties targeted Pennsylvanians to a degree any greater than other users. To the contrary, the evidence indicates that the county websites were equally accessible in all states and that, if anything, the counties primarily targeted Florida and Florida residents.

## III. **CONCLUSION**

For the foregoing reasons, Defendant D&T's Motion to Dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Grant Street Group, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> D&T Ventures LLC, Pacific Blue Software, Inc., and West Florida Business Systems, Inc., <br><br> Defendants. <br><br> AMBROSE, Senior District Judge | Civil Action No. 10-CV-01095 |

**ORDER OF COURT**

AND NOW, this 4th day of January, 2012, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant D&T Ventures, LLC's Motion to Dismiss (Docket No. 77) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Judge