IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Grant Street Group, Inc.,<br><br>        Plaintiff,<br><br>vs.<br><br>D&T Ventures, LLC, Pacific Blue Software, Inc., and West Florida Business Systems, Inc.,<br><br>        Defendants.<br><br>AMBROSE, Senior District Judge | Civil Action No. 10-1095 |

**OPINION
and
ORDER OF COURT**

Plaintiff Grant Street Group ("GSG") has brought this patent infringement lawsuit against Defendants D&T Ventures, LLC ("D&T"), Pacific Blue Software, Inc. ("PBS"), and West Florida Business Systems, Inc. ("WFBS"), under 35 U.S.C. § 271 *et seq*. Plaintiff's claims arise from, *inter alia*, Defendants' alleged sale of and offering for sale products and services for conducting online tax lien certificate auctions. Pending before the Court is PBS's Motion to Dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Docket No. 79). After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, PBS's Motion to Dismiss is granted.

**I. BACKGROUND**

**A. Factual Background**

Plaintiff GSG is a software development company headquartered in Pittsburgh, Pennsylvania. GSG is in the business of, *inter alia*, developing customized software applications used by government entities and financial institutions for Internet auctions of financial and legal instruments. (Complaint ¶ 1). GSG owns the fictitious name registration MuniAuction, Inc. Id.

¶ 7. On April 1, 2009, the United States Patent and Trademark Office assigned MuniAuction, Inc. United States Patent No. 7,523,063 entitled "Process and apparatus for conducting auctions over electronic networks" (the " '063 Patent"). Id. The '063 Patent discloses "[a]n apparatus and process for conducting auctions, specifically municipal bond auctions, over electronic networks, particularly the Internet." Id.; see also id. Ex. A (Docket No 1-2).

Defendant PBS is a software development company located in Florida that provides software products to municipality tax collectors in Florida. Declaration of Todd Randa ("Randa Decl.") ¶ 2 (Docket No. 80-1). For two months in 2009 and again for two months in 2010, PBS provided an internet auction software application called Tacera to the tax collector for Manatee County, Florida. Id. ¶ 5. Manatee County used the software application to conduct online auctions for tax liens in connection with delinquent property taxes in the county. Id. The auction was run in Florida on computer servers located in Florida concerning liens on Florida properties. Id. At the time PBS filed the instant motion, no other auctions had been conducted with software written by or for PBS. Id.

One hundred sixty-two people or companies registered for the 2009 Manatee County auction. Id. ¶ 8. Only three of those who registered provided a Pennsylvania address, one of whom was a then-employee of Plaintiff, Walter Horigan. Id. Two of the winning bidders in the 2009 auction provided Pennsylvania addresses. Id. ¶ 9. One thousand five hundred ninety-six bidders registered for the 2010 Manatee County auction, a number that included bidder information carried over from the prior year. Id. ¶ 12. There were no new registrations for the 2010 auction from anyone who provided a Pennsylvania address. Id.

In both the 2009 and 2010 Manatee County auctions, registered users were required to enter into a Manatee County Auction User Agreement with the Tax Collector of Manatee County. Id. ¶¶ 11, 13. The User Agreements explained, inter alia, that:

> The Tax Collector has retained the services of Pacific Blue Software, Inc. ("Pacific Blue Software") to create and provide users with access to the Manatee County Tax Collector's Tax Certificate Sale Web Site located at

>   www.pacificblueauction.com . . . ("Web Site") in conducting the Manatee County Tax Collector's Tax Certificate Auctions. In consideration of providing the Web Site, the Tax Collector has agreed to pay Pacific Blue Software a fee determined by the number of Tax Certificates that are sold through the use of the Web Site. Therefore, Pacific Blue Software is an intended third party beneficiary to this Agreement, as well as to any financial transaction that you may enter as a result of using the Web Site including the purchase of a Tax Certificate. Since the Tax Collector, not Pacific Blue Software, is conducting the Tax Certificate Auctions and sales of County-Held Tax Certificates via the Web Site, Pacific Blue Software has limited liability to you regarding the same, as discussed more in detail in this Agreement.

Docket No. 80-2 (2009 User Agreement). The User Agreement further provided, inter alia:

>   As noted above, Pacific Blue Software provides services to the Tax Collector that enable the Tax Collector to offer eligible members of the public an opportunity to locate and bid on available Tax Certificates during online auctions offered via the Web Site and to purchase available County-Held Tax Certificates via the Web Site, in order to facilitate the purchase and sale of such Tax Certificates. All Tax Certificates available through the Web Site are offered by the Tax Collector and none are offered by Pacific Blue Software. Pacific Blue Software is not a party to the offer or sale of these Tax Certificates, does not own the Tax Certificates listed on the Web Site, and only provides the technical means to facilitate the listing, offer, bidding, purchasing, and sale of the Tax Certificates via the Web Site. . . .

Id. at 4-5.

>   BIDDER ACKNOWLEDGES AND AGREES THAT PACIFIC BLUE SOFTWARE'S DUTIES ARE MINISTERIAL IN NATURE. PACIFIC BLUE SOFTWARE IS MERELY A FACILITATOR AND PROVIDES TRANSACTIONAL ASSISTANCE TO THE TAX COLLECTOR AND IS NOT A PARTY TO ANY TRANSACTION. PACIFIC BLUE SOFTWARE SHALL NOT AND DOES NOT TAKE TITLE, OWNERSHIP OR POSSESSION OF ANY TAX CERTIFICATES OR FUNDS THAT ARE INVOLVED IN ANY TRANSACTIONS. . . .

Id. at 12; see also Randa Decl. ¶ 13.

## B. Procedural History

On August 20, 2010, Plaintiff filed a Complaint against WFBS, D&T, and PBS in this Court. (Docket No. 1). On October 19, 2010, Defendants WFBS and D&T filed a joint motion to dismiss for lack of personal jurisdiction. (Docket No. 10).[1] On February 4, 2011, PBS filed a

---

[1] On November 18, 2010, default was entered against PBS at Plaintiff's request. (Docket Nos. 22, 23). PBS moved to set aside the default on December 23, 2010 (Docket No. 33), and I granted the motion on March 1, 2011 (Docket No. 65).

similar motion to dismiss. (Docket No. 54). On April 4, 2011, I issued an Order denying the motions to dismiss as premature on the merits and allowing all Defendants to refile motions to dismiss after a period of limited jurisdictional discovery. (Docket No. 71). On May 24, 2011, after jurisdictional discovery, PBS filed the instant Motion to Dismiss for Lack of Personal Jurisdiction, Memorandum in Support, and supporting documents. (Docket Nos. 79-80). On June 7, 2011, Plaintiff filed a Response in Opposition to PBS's Motion. (Docket No. 92, 96). PBS did not file a Reply Brief. The motion is now ripe for my review.

## II. LEGAL ANALYSIS

PBS argues GSG's Complaint against it must be dismissed under rule 12(b)(2) because this Court lacks personal jurisdiction over PBS. For the reasons set forth below, I agree that there is no personal jurisdiction over PBS in this forum.

### A. Standard of Review Under Fed. R. Civ. P. 12(b)(2)

"Because federal courts are courts of limited jurisdiction, a presumption arises that they are without jurisdiction until the contrary affirmatively appears." Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court in all stages of the litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1992). In other words, once a defendant raises a lack of personal jurisdiction as a defense, the burden to prove the existence of personal jurisdiction over the defendant shifts to the plaintiff. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Normally, in response to a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing that the defendants are subject to personal jurisdiction. When the parties have conducted jurisdictional discovery, however, a plaintiff's burden of proof is by the preponderance of the evidence. Pieczenik v. Dyax Corp., 265 F.3d 1329, 1334 (Fed. Cir. 2001).[2] The plaintiff may not rely on the pleadings to satisfy his burden,

---

[2] The exercise of personal jurisdiction in a patent infringement lawsuit is a question of federal law controlled by the decisions of the Federal Circuit. See, e.g., 3D Sys., Inc. v. Aarotech Labs., Inc., 160

4

but must establish a basis for personal jurisdiction through sworn affidavits or other competent evidence.  N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (2d Cir. 1990).

### B. Personal Jurisdiction

Under the Federal Rules of Civil Procedure, "a district court may assert personal jurisdiction 'over non-resident defendants to the extent permissible under the law of the state where the district court sits.'" Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998)); Beverly Hills Fan Co., 21 F.3d at 1569.  Under Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322(b), Pennsylvania courts may "exercise personal jurisdiction over non-resident defendants to the constitutional limits of the Due Process Clause of the Fourteenth amendment." Remick, 238 F.3d at 255 (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)).  Because the reach of Pennsylvania's long-arm statute is coextensive with the federal Due Process Clause, I look to whether the federal constitutional requirements of due process are satisfied.

There are two types of personal jurisdiction a court may assert over a defendant – general jurisdiction or specific jurisdiction.  Mellon Bank (East) PSFS, 960 F.2d at 1221. "If general jurisdiction exists, a court may exercise jurisdiction over a non-resident defendant as to any claim against [him], regardless of whether the subject matter of the cause of action has any connection to the forum." Id.  General jurisdiction normally is invoked only when a defendant has maintained "systematic and continuous" contacts with the forum state.  Marten v Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v Hall, 466 U.S. 408, 414-15 & n.8 (1984)); Remick, 238 F.3d at 255.  In contrast, specific jurisdiction "is present only if the plaintiff's cause of action arises out of a defendant's forum related activities, such that the defendant should reasonably anticipate being haled into court in that forum."

---

F.3d 1373, 1376-77 (Fed. Cir. 1998); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).

Remick, 238 F.3d at 255 (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996)); see also Marten, 499 F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").

Here, Plaintiff does not argue that this Court has general jurisdiction over PBS.[3]  Rather, Plaintiff contends that the facts of record support a finding of specific jurisdiction over PBS.  For the reasons set forth below, I disagree.

The Court of Appeals for the Federal Circuit applies a three-prong test to determine whether the exercise of specific personal jurisdiction satisfies due process in a patent case. Specifically, the existence of specific jurisdiction depends on:

> (1) whether the defendant "purposely directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair."

Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201-02 (Fed. Cir. 2003) (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001)); see also Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1994).  Although isolated or sporadic contacts that create a substantial connection with the forum state may support specific jurisdiction, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980), these contacts must be more than "random, fortuitous, or attenuated."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985).

I disagree with Plaintiff that this Court has specific jurisdiction over PBS under this traditional jurisdictional test.  Indeed, there simply is no evidence that PBS purposely directed any activities at residents of Pennsylvania, let alone activities giving rise to Plaintiff's claims in

---

[3]  Plaintiff mentions in its opposition brief that it addressed the issues of general jurisdiction in its response in opposition to PBS's pre-discovery motion to dismiss and thus has not revisited the topic in the briefs currently before me. Pl.'s Br. Opp. (Docket No. 92) at 6. Even if Plaintiff intends this comment to preserve its general jurisdiction argument, which is unclear at best, I decline to find such jurisdiction in this case.  On this point, I agree with PBS that the facts, even when viewed in the light most favorable to Plaintiff, do not establish the type of constant, systematic contacts with Pennsylvania or its citizens that would give this Court general personal jurisdiction over PBS.  See PBS Br. Supp. (Docket No. 80) at 8.

this case. As the affidavits and other evidence show, PBS is a Florida corporation and does not have any offices, locations, employees, or other presence or residence outside the State of Florida. PBS is not registered to do business in any state other than Florida and does not own or possess any real property outside of Florida. PBS does not have any business activities, clients, or customers in Pennsylvania and does not utilize any vendors in Pennsylvania. PBS also does not advertise its products in media outlets in Pennsylvania and does not attend or exhibit in any trade shows in Pennsylvania. Randa Decl. ¶ 3.

PBS's activities related to the tax-licensing software at issue in this case likewise have no connection to Pennsylvania. As the evidence shows, PBS licensed and sold the Tacera software at issue to one county located in Florida during the 2009-2010 timeframe and provided software services to assist with that county's tax sales. Manatee County used the internet software application to conduct online auctions for tax liens in connection with delinquent property taxes in the County. Id. ¶ 5. The auction was run in Florida on computers located in Florida concerning liens on property in Florida and was governed by Florida law. Id. No other auctions have been conducted with software written by or for PBS. Id. The functionality and parameters for the Tacera software for the Manatee Tax Collector were determined by Manatee County, not PBS. Id. ¶ 6. The 2009 and 2010 auctions were run under the direction of Manatee County. Id. PBS did not conduct any advertising for the auctions run on Manatee County's auction website. Id. ¶ 7.

The only evidence submitted showing contacts of any kind with Pennsylvania even arguably related to Plaintiff's claims in this case includes documentation that of the 162 people or companies registered for the 2009 tax certificate auction with Manatee County and the tax certificates sold by the County, there were only three bidders from Pennsylvania of whom two successfully purchased tax certificates. The unsuccessful third bidder, Walter Horigan, was an

employee of Plaintiff. Randa Decl. ¶¶ 8-9. There were no new registrations and no bids for the 2010 auction from anyone with a Pennsylvania address. Id. ¶ 12.[4]

Plaintiff's argument that these contacts are sufficient to confer specific personal jurisdiction over PBS under the facts of this case is without merit. Although Plaintiff is correct that, under certain circumstances, even a single act can support specific jurisdiction, this is not one of those situations. As set forth above, the county tax collector determines the criteria for any potential tax certificate sales, and any sales contracts are between the users/bidders and the tax collector. PBS does not solicit bidders or have any control over who can bid on or purchase the tax certificates. Thus, the three Pennsylvania bids (including the two successful bids) do not demonstrate that PBS *purposefully* directed any activities to Pennsylvania or Pennsylvania residents. As the Court of Appeals for the Federal Circuit has explained:

> In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, . . . the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant. . . . [Plaintiff's] flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.

Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998) (quoting Burger King, 471 U.S. at 475); see also Burger King, 471 U.S. at 475 n.17 and cases cited therein. For all of these reasons, the contacts at issue are insufficient to sustain specific jurisdiction over PBS in Pennsylvania under the classic jurisdictional test.[5]

---

[4] Jurisdictional discovery also revealed that PBS had one inquiry from a person purporting to be from Pennsylvania about a PBS product. Specifically, a man purporting to be the spouse of a person who allegedly was going to be the tax collector for a Pennsylvania county sent a single e-mail to PBS inquiring about a PBS tax collection software product unrelated to auctions. PBS returned the phone call and e-mailed a holiday card to this individual, but had no further contact with him. See Docket No. 56, ¶ 18. This single series of contacts does not alter my jurisdictional analysis. The contacts simply do not rise to the level of continuous systematic forum activity required to support general jurisdiction; nor is there evidence that this contact arose out of Plaintiff's claims in this case as required for specific jurisdiction.

[5] Plaintiffs citation to NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1316 (Fed. Cir. 2005), for the proposition that Plaintiff's infringement claims arise out of Pennsylvania because a Pennsylvania resident has "used" the infringing system does not change my conclusion. See Pl.'s Br. Opp. (Docket No. 92) at 11-12. Even accepting *arguendo* Plaintiff's characterization of the NTP, Inc. court's analysis of the term "use," that case speaks to the merits of the infringement claim and does not involve a personal jurisdiction

Plaintiff's alternative argument that PBS should be subject to personal jurisdiction because it provides a highly interactive website to its tax collector client that has been accessed in Pennsylvania is likewise misplaced.

Although the Court of Appeals for the Federal Circuit has not yet expressly adopted it, courts routinely use the Zippo "sliding scale" test of online interactivity to evaluate jurisdiction based on the use and availability of an internet site. See Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); see also Trintec Indus. Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1283 (Fed. Cir. 2005). Under the Zippo test, the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. At one end of the spectrum are situations where a defendant actively does business over the Internet and thereby purposely avails itself of the privilege of engaging in activity in that state. Zippo, 952 F. Supp. at 1124. A defendant on this side of the scale typically "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." Toys "R" Us, Inc. v. Two Step, S.A., 318 F.3d 446, 451 (3d Cir. 2003) (quoting Zippo, 952 F. Supp. at 1124). At the opposite end of the scale are situations where a defendant has simply posted information on an Internet website accessible to users in other jurisdictions. Zippo, 952 F. Supp. at 1124. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. Id. "The middle ground is occupied by interactive web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Id. As the Court of Appeals for this Circuit has explained:

---

analysis. Moreover, Plaintiff's argument goes to the second prong of the specific jurisdiction analysis – *i.e.*, that the claim "arise out of or relate to" the defendant's forum activities. Pl.'s Br. Opp. at 11-12. As set forth above, Plaintiff has not shown that PBS has met the first prong of the jurisdictional test – purposeful availment. Because PBS has not purposefully directed any activities at Pennsylvania residents, I do not reach the "arising out of" step.

> the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts.

Toys "R" Us, Inc., 318 F.3d at 454. For example, courts acknowledge that the Zippo defendants purposefully availed themselves of conducting activity in Pennsylvania by contracting with approximately 3,000 Pennsylvanians and "repeatedly and consciously [choosing] to process Pennsylvania residents' applications and to assign them passwords," knowing that the contacts would result in business relationships with Pennsylvania customers. Zippo, 952 F. Supp. at 1126; see also Machulsky v. Hall, 210 F. Supp. 2d 531 (D.N.J. 2002).

Here, there are two websites potentially at issue: (1) PBS's company website located at the domain named www.pacificbluesoftware.com; and (2) the website on which Manatee County actually conducted the tax certificate auctions, www.pacificblueauction.com. Neither of these websites, however, establish personal jurisdiction over PBS under Zippo or any other jurisdictional test. The first website, www.pacificbluesoftware.com, is a non-interactive, informational company website. Randa Decl. ¶ 4. Visitors to this website may only review contact information and information on PBS's products. Site visitors are not able to order any products or participate in any auctions via this website. Id. Because there is no evidence or argument that PBS's corporate website is anything other than a passive website that makes information available to those who are interested in it, the website is not grounds for the exercise of personal jurisdiction.

Perhaps recognizing the passive nature of PBS's company website, Plaintiff focuses its jurisdictional arguments on Manatee County's tax auction website itself, www.pacificblueauction.com. See Pl.'s Br. Opp. at 4. Specifically, Plaintiff argues that because this auction website is highly interactive and PBS has provided the websites for and to the county, exercise of personal jurisdiction is proper. Id. I disagree.

10

As the evidence shows, the website located at www.pacificblueauction.com is a site PBS developed for the Florida county that utilizes its services.  Although PBS hosts the website and provides support services, the county tax collector, not PBS, conducted the tax certificate auctions and sales of county-held tax certificates via the website.  Randa Decl. ¶¶ 11, 13.  All tax certificates were offered by the Tax Collector, not PBS.  PBS was not a party to the offer or sale of certificates; does not own the certificates; and provided only the technical means to facilitate the listing, offer, bidding, purchasing, and sale of the tax certificates via the website.  Id.  As the User Agreement between the tax collector and the auction registrants makes clear, PBS's duties were ministerial in nature; PBS merely facilitated and provided transactional assistance to the tax collector; and PBS was not a party to any sales transaction.  Id.

Based on these facts, I find that PBS did not purposefully avail itself of conducting activity in Pennsylvania.  The mere fact that PBS may have provided an interactive website to its client to use to conduct tax certificate auctions does not automatically confer personal jurisdiction.  As set forth above, contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant for jurisdictional purposes.[6]  Regardless of the degree of interactivity of the website at issue, it is undisputed that PBS had no control over where or to whom the tax collector could sell the tax certificates.  Likewise, there is no evidence that PBS had any control over the identity of bidders; any discretion to stop a sale or to impose specific terms of sale; or any ability to exclude bidders from any particular location.  Given PBS's complete lack of control over the tax sale process coupled with the absence of any significant contacts with Pennsylvania, I simply cannot conclude that PBS "purposefully availed" itself of conducting activity in Pennsylvania via the tax auction website.

---

[6] In addition to the lack of evidence that PBS directed any of its web activities to Pennsylvania, there is no evidence that Manatee County itself targeted its website or activities to Pennsylvania residents.  Although the county website and auction were certainly accessible from Pennsylvania, there is no evidence that Manatee County targeted Pennsylvanians to a degree any greater than other users.  To the contrary, the evidence indicates that the county websites were equally accessible in all states and that, if anything, Manatee County primarily targeted Florida and Florida residents.

The parties' citation to case law involving the auction website "eBay" does not alter my analysis. In its brief, PBS analogizes this case to cases in which courts declined to find personal jurisdiction over defendants who sold products to purchasers in the forum state using eBay. See Pl.'s Br. Supp. at 13-14 and cases cited therein. These cases have reasoned that there is no personal jurisdiction over the seller where, as on eBay, the ultimate destination of eBay item is completely determined by the bidders, and the location of the highest bidder cannot be predicted. See, e.g., Boschetto v. Hansing, 539 F.3d 1011, 1023 (9th Cir. 2008); Winfield Collection, Ltd. v. McCauley, 105 F. Supp. 2d 746, 749 (E.D. Mich. 2000); Sayeedi v. Walser, 835 N.Y.S.2d 840 (N.Y.C. Civ. Ct. 2007). Plaintiff counters that the eBay cases are factually distinguishable from this case because PBS is the website host and thus is more analogous to eBay itself than those who conduct business over eBay. Pl.'s Opp. at 15-16. Plaintiff argues that PBS's capacity as the "auction intermediary" supports rather than defeats personal jurisdiction in this case. This argument is unpersuasive. None of the cases Plaintiff cites suggest that purposeful availment exists where, as here, PBS created the auction website at the request of and for Manatee County, the site was entirely within the control of the county tax collector, and PBS retained absolutely no discretion or control over the auction process.

In short, the courts have made it clear that the advent of the Internet has not vitiated the traditional concepts of minimum contacts and the requirement that defendants have sufficient contacts with the forum jurisdiction that they could reasonably anticipate being sued there. In this case, Plaintiff has not shown that PBS has contacts with or benefits from Pennsylvania that reasonably would lead PBS to expect that it could be subject to liability here. To exercise personal jurisdiction over PBS in this case would render the company amenable to suit in any jurisdiction from which an Internet user could access the tax auction website despite PBS's lack of discretion and control over such access. Such a broad application of personal jurisdiction would offend the longstanding constitutional standards requiring "minimum contacts" and the constitutional notions of fair play and substantial justice. Id.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Defendant PBS's Motion to Dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Grant Street Group, Inc.,<br><br>                    Plaintiff,<br><br>vs.<br><br>D&T Ventures LLC, Pacific Blue Software, Inc., and West Florida Business Systems, Inc.,<br><br>                    Defendants.<br><br>AMBROSE, Senior District Judge | Civil Action No. 10-CV-01095 |

## **ORDER OF COURT**

AND NOW, this 4th day of January, 2012, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant Pacific Blue Software, Inc.'s Motion to Dismiss (Docket No. 79) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is granted.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Judge